IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMAEL SANFORD,

Plaintiff,

v.

GEORGIA DEPARTMENT OF PUBLIC
SAFETY, and its Division, the
GEORGIA STATE PATROL, and
MARK HAMBERT, individually and
in his official capacity under color of
law as Major, Georgia State Patrol,

Defendants.

:   CIVIL ACTION NO.
:   1:20-CV-4532-AT-JSA
:
:
:
:
:
:
:
:
:
:
:   **NON-FINAL REPORT AND**
:   **RECOMMENDATION ON A**
:   **MOTION TO DISMISS**

Plaintiff filed this lawsuit on November 5, 2020 against the Georgia Department of Public Safety and the Georgia State Patrol ("DPS") and against Major Mark Hambert in both his individual and official capacities. This action is now before the Court upon both Defendants' Partial Motion to Dismiss Plaintiff's Complaint [9], which seeks the dismissal of six of the eight counts Plaintiff pleads in his Complaint. For the reasons stated below, the undersigned **RECOMMENDS** that the Partial Motion to Dismiss [9] be **GRANTED IN PART** and **DENIED IN PART**. Specifically, Plaintiff's claims against DPS under 42 U.S.C. § 1983, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, should be

**DISMISSED**. Plaintiff's § 1983 and FMLA claims against Hambert in his official capacity should be **DISMISSED** except insofar as they seek a remedy of reinstatement. Finally, Plaintiff's § 1983 and FMLA claims against Hambert in his individual capacity should be **DISMISSED**, however, Plaintiff should be granted leave to amend his § 1983 claim against Hambert in his individual capacity within **fourteen (14) days** of any Order by the District Court adopting this Report and Recommendation.

## I.    BACKGROUND

The following facts are alleged in the Complaint [1] and are assumed to be true for purposes of Defendants' motion. Plaintiff is an African-American male who was employed as a Trooper by DPS, an agency of the State of Georgia, between November 20, 2012 and April 1, 2019. Compl. [1] at ¶¶ 4, 7, 12, 91. At all times relevant to his claims, Plaintiff served under the command of Hambert, who had the authority to terminate his employment. *Id.* at 10. At the outset of his employment as a Trooper, Plaintiff was assigned to a Gwinnett County post, where he was supervised by Sergeant Kustra. *Id.* at ¶¶ 13–14. Plaintiff asserts that Kustra treated him less favorably than non-black employees. *Id.* at ¶¶ 15–16. Specifically, Kustra disciplined Plaintiff for incomplete vehicle incident reports despite not disciplining white officers with similarly incomplete reports; ordered Plaintiff to travel to

Savannah, Georgia on a day off despite the availability of other officers to work the assigned detail; and consistently monitored Plaintiff's video activity in a manner he did not do for others. *Id.* at ¶¶ 17–24. Similarly, despite permitting other officers to remain at home until "called out," Plaintiff was ordered to be in the office all day and ordered to check his emails even when off-duty. *Id.* at ¶¶ 25–30.

On March 8, 2018, Plaintiff was transferred to a post in Monroe, Georgia, where he served under the supervision of SFC James Buchanan. *Id.* at ¶¶ 31–33. Plaintiff states that Buchanan harassed him and treated him unfairly, including by accusing Plaintiff of having been involved in an unreported accident and, as a result, suspending his take-home vehicle privileges. *Id.* at ¶¶ 34–36. Plaintiff denies that any such accident occurred. *Id.* at ¶ 40. In May 2018, shortly after Buchanan's April 2018 accusation, Plaintiff suffered a hernia for which he needed immediate surgery. *Id.* at ¶¶ 42–47. Because of his surgery and resulting back pain, gastrointestinal problems, and severe anxiety, Plaintiff took extended medical leave. *Id.* at ¶¶ 48–53. While Plaintiff was on medical leave, however, Buchanan emailed him accusing him of poor communication, berating his ability to follow directions, and stating that he would be disciplined upon his return from leave. *Id.* at ¶¶ 59–62. Plaintiff complained to DPS about Buchanan's emailing him while on leave and the general unfair treatment of black officers in comparison to white officers. *Id.* at ¶ 63.

On August 3, 2018, Corporal Tommie Young asked Plaintiff to return his weapons, badges, and laptop. *Id.* at ¶¶ 67–74. Several months later, Plaintiff was subject to an Internal Affairs investigation concerning the alleged vehicle accident that Buchanan had accused him of failing to report. *Id.* at ¶¶ 75–77. Although Plaintiff remained on medical leave, DPS denied his request to extend his paid medical leave in February 2019, instead allowing his leave to become unpaid. *Id.* at ¶¶ 78–85. On March 22, 2019, while he was on unpaid medical leave, Plaintiff was informed this his employment would be terminated effective April 1. *Id.* at ¶¶ 86–91. At the time, Plaintiff was not given any reason for his termination. *Id.* at ¶ 90.

Based on these facts, Plaintiff alleges that he was subject to race discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Title VII of the Civil Rights Act of 1964; that Defendants unlawfully interfered with his rights under the Family and Medical Leave Act; that he was subject to retaliation for exercising his rights under Title VII and the FMLA; and that he was subject to disability discrimination in violation of the Americans with Disabilities Act. Plaintiff's constitutional claims (Count I), brought under 42 U.S.C. § 1983, and his FMLA claims (Counts IV–V) are asserted against both DPS and Hambert, both in his official capacity and in his

individual capacity. Plaintiff's Title VII (Counts II–III) and ADA claims (Counts VI–VIII) are asserted against only DPS.

## II.   DISCUSSION

Defendants move to dismiss all but Plaintiff's Title VII claims under Rule 12 of the Federal Rules of Civil Procedure, both for lack of jurisdiction and for failure to state a claim.

### A.   *Standards on a Motion to Dismiss*

#### 1.   Standards Under Rule 12(b)(1)

Federal courts have limited jurisdiction; "[t]hey possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations and internal quotation marks omitted). Under Rule 12(b)(1), the Court must dismiss an action if it lacks subject matter jurisdiction to hear a plaintiff's claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Courts are to presume that they lack subject-matter jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citations and internal quotation marks omitted).

Attacks on subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure come in two forms: facial attacks and factual attacks.

*Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990); *see also Hulsey v. Gunn*, 905 F. Supp. 1067, 1070 (N.D. Ga. 1995). "Facial attacks" on the complaint require "the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

The Eleventh Circuit has held that these two types of attack "differ substantially." *Id.* "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981)). A factual attack under Rule 12(b)(1) challenges subject matter jurisdiction "irrespective of the pleadings." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). In resolving a 12(b)(1) factual attack, a court is "free to independently weigh facts" and consider evidence outside of the pleadings, so long as its conclusions do not implicate the merits of the plaintiff's claims. *Id.* at 925.

Defendants argue that Plaintiff's claims under § 1983, the FMLA, and the ADA must be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction because they are barred by state sovereign immunity. Thus, it appears that Defendants are making a facial attack, rather than a factual attack, because Defendants do not rely on information outside the pleadings to argue that the Court lacks subject matter jurisdiction over Plaintiff's § 1983, FMLA, and ADA claims.

2.     Standards Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff, however, may not merely plead facts in a complaint sufficient to find a claim to relief is conceivable; instead, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

Iqbal went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

B.    *Defendants' Partial Motion to Dismiss*

1.    § 1983 Claims

a.    Against DPS

Defendants argue that Plaintiff's § 1983 claims against DPS are not authorized by the statute.

§ 1983 provides that "[e]very person" who, under color of state law, deprives any other person of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the injured party. Under the terms of the statute, "neither a State nor its officials acting in their official capacities are 'persons'" subject to suit. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). State agencies, which operate as arms of the state, are likewise not considered to be "persons" subject to suit under § 1983. *Brandenburg v. Bd. of Regents of Univ. Sys. of Ga.*, 518 F. App'x 628, 631 (11th Cir. 2013) (*per curiam*) (citing *GeorgiaCarry.Org, Inc.*, 687 F.3d at 1254; *Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009)) (affirming dismissal of claims against a state university because it was not a "person" under § 1983).

Defendants argue that DPS, as a state agency, is not a "person" who can be sued under § 1983. Plaintiff apparently concedes the issue. *See* Resp. [16] at 4. No

error in Defendants' argument being apparent, the undersigned finds that, independent of any sovereign immunity to which they may be entitled, DPS is not subject to Plaintiff's § 1983 claims. *See GeorgiaCarry.Org, Inc.*, 687 F.3d at 1254 (noting that § 1983 claims against states may be dismissed on statutory grounds rather than Eleventh Amendment grounds); *Edenfield v. Gateway Behavioral Health Servs.*, No. 2:16-cv-170, 2018 WL 6199685, at *8 (S.D. Ga. Nov. 28, 2018) (dismissing § 1983 claims against a functional state agency because of its status as an arm of the state and thus foregoing any discussion of its entitlement to Eleventh Amendment immunity). As such, Plaintiff's § 1983 claims against DPS should be dismissed entirely.

### b.   Against Hambert in His Official Capacity

Defendants argue that the same principle compels dismissal of Plaintiff's § 1983 claims against Hambert in his official capacity. Plaintiff does not respond to Defendants' argument; rather, he insists Hambert is subject to suit in his official capacity because he is not protected by sovereign immunity under the Eleventh Amendment to the United States Constitution. *See* Resp. [16] at 4–6. However, the Eleventh Amendment has no bearing on whether § 1983 even purports to authorize a claim against Hambert in his official capacity. The Eleventh Circuit has flatly stated that "state officials acting in their official capacities are not 'persons' subject

to liability under" § 1983. *Carr v. City of Florence*, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990) (citing *Will*, 491 U.S. at 58 (1989)). This is because "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Thus, like states and their agencies, state officials being sued in their official capacities are not subject to suit under § 1983. *Carr*, 916 F.2d at 1525 n.3 (noting that state officials do not "need to rely exclusively on eleventh amendment immunity to avoid liability in their official capacities in section 1983 cases"); *see Duncan v. Bibb Cty. Sheriff's Dep't*, 471 F. Supp. 3d 1243, 1255 (N.D. Ala. 2020); *Clarke v. Goodson*, No. 2:17-cv-730-MHT-TFM, 2018 WL 4610652, at *6 (M.D. Ala. May 1, 2018), *report & rec. adopted by* 2018 WL 4609067 (M.D. Ala. Sept. 25, 2018) ("State officials acting in their official capacities are outside the class of 'persons' subject to liability under § 1983.") (internal quotation removed); *Adams v. Franklin*, 111 F. Supp. 2d 1255, 1263 (M.D. Ala. 2000). Plaintiff does not dispute that Hambert, an employee of a state agency, is a state official. The undersigned thus finds that Hambert is not subject to liability in his official capacity for Plaintiff's § 1983 claims, at least to the extent which Plaintiff seeks monetary and/or retrospective remedies, such as damages, back pay, and front pay.

However, Plaintiff's request that Hambert, in his official capacity, be ordered to reinstate him is not considered to be part of a claim against the state. Under a long-standing differentiation between claims for retrospective relief and claims for prospective, injunctive relief, his claims for equitable relief against Hambert are considered to be claims against a "person" otherwise subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 n.10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief would be a person under § 1983 because official capacity actions for prospective relief are not treated as actions against the State.") (internal quotation removed) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). Thus, the text of § 1983 is no bar to Plaintiff's request for reinstatement as it is asserted against Hambert in his official capacity.

Defendants insist that state sovereign immunity nevertheless bars Plaintiff's official-capacity claims against Hambert. State sovereign immunity, as recognized by the Eleventh Amendment of the Constitution and interpreted by courts, generally "bars federal courts from entertaining suits against states." *Abusaid v. Hillsborough Cty. Bd. of Comm'rs*, 405 F.3d 1298, 1302 (11th Cir. 2005). Thus, "in the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch.*

*& Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Stephens v. Ga. Dep't of Transp.*, 134 F. App'x 320, 324 (11th Cir. 2005). "Although, by its terms, the Eleventh Amendment does not bar suits against a state in federal court by its own citizens, the Supreme Court has extended its protections to apply in such cases." *Abusaid*, 405 F.3d at 1303.

As a general matter, a lawsuit against a state official in their official capacity is barred by state sovereign immunity to the extent that "the state is, in fact, the real party in interest." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984)). As with the state-person distinction under § 1983, a determination of whether a state is the real party in interest in an official-capacity claim against a state official turns on the type of relief being sought. *See Will*, 491 U.S. at 71 n.10 (describing the § 1983 state-person distinction as "commonplace in sovereign immunity doctrine"). Claims against a state official for monetary relief that would be "paid from public funds in the state treasury" are generally subject to state sovereign immunity. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *see Abusaid*, 405 F.3d at 1313. However, state officials acting in their official capacities are not entitled to state sovereign immunity from claims for prospective, injunctive relief under certain circumstances. *Ex parte Young*, 209 U.S. 123, 159–60 (1908); *see also*

*Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005) ("[O]fficial capacity suits for prospective relief to enjoin state officials from enforcing unconstitutional acts are not deemed to be suits against the state and thus are not barred by the Eleventh Amendment"). This is a narrow exception to the general rule of state immunity, in that it permits suit only against a state official directly for prospective equitable relief to end a continuing violation of federal law. *See Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Serv.*, 225 F.3d 1208, 1219 (11th Cir. 2000); *see also Nicholl v. Att'y Gen., Ga.*, 769 F. App'x 813, 815 (11th Cir. 2019) (*per curiam*).

Defendants argue that, although it is not a monetary claim, Plaintiff's request for reinstatement does not amount to a request for an injunction against any ongoing violation of federal law. Defendants contend that Plaintiff's allegations of discrimination do not include any conduct that continues today, and that reinstatement would aim to remedy only past violations of federal law. Thus, say Defendants, Plaintiff's reinstatement request cannot avail itself of the *Young* exception to state sovereign immunity.

Defendant's argument is contradicted by binding Eleventh Circuit precedent. In *Lane v. Central Alabama Community College*, the Eleventh Circuit weighed whether a § 1983 plaintiff's request for reinstatement of his public employment, which he alleged had been terminated in an unlawfully retaliatory manner, fell

14

within the *Young* exception to state sovereign immunity. *See* 772 F.3d 1349, 1350–51 (11th Cir. 2014) (*per curiam*). The court determined that the claim fell within the exception and could thus proceed against a state official in an official capacity. *See id.* Since *Lane*, courts within this circuit have routinely held that state officials facing official-capacity claims for reinstatement are subject to suit under § 1983 and unprotected by state sovereign immunity. *See, e.g.*, *Cooper v. Ga. Dep't of Transp.*, 837 F. App'x 657, 669 (11th Cir. 2020) (*per curiam*); *Moody v. Bd. of Trs. of Univ. of Ala.*, No. 2:16-cv-01495-AKK, 2017 WL 2984879, at *3 (N.D. Ala. July 13, 2017); *Williams v. Dewey*, No. 7:15-CV-172 (WLS), 2016 WL 890575, at *2 (M.D. Ga. Mar. 8, 2016).

In support of their argument for dismissal of the claim even for reinstatmeent, Defendants rely on this Court's decisions in *Ingram v. Buford City School District* and *Fesseha v. Board of Regents of University System of Georgia*. In both cases, this Court dismissed § 1983 claims for prospective, injunctive relief because the alleged acts of employment discrimination underlying them were not ongoing at the time of suit. *See Ingram*, No. 1:18-CV-3103-ELR-WEJ, 2018 WL 7079179, at *6 (N.D. Ga. Dec. 17, 2018), *report & rec. adopted*, (N.D. Ga. Apr. 9, 2019); *Fesseha*, No. 1:06-CV-1734-ODE-JFK, 2007 WL 9702357 at *9 n.4 (N.D. Ga. Dec. 17, 2007), *report & rec. adopted by* 2008 WL 1140711 (N.D. Ga. Mar. 11, 2008). *Fesseha*, however,

preceded *Lane*. As for *Ingram*, the Court declines to follow that non-controlling case to the extent it differs from the holding in *Lane*. *See Echols v. Ga. Piedmont Tech. Coll.*, No. 1:20-CV-2794-TWT-AJB, 2021 WL 1521987 (N.D. Ga. Jan. 22, 2021), *report & rec. adopted in relevant part by* 2021 WL 870717 (N.D. Ga. Mar. 9, 2021) (permitting a reinstatement claim against a state official to proceed under *Ex parte Young* and stating that *Ingram* failed to "explain why *Lane* did not control its reinstatement determination").

Thus, because Hambert is not considered a state under either § 1983 or the Eleventh Amendment for purposes of Plaintiff's official-capacity claim for reinstatement, the undersigned declines to recommend dismissal of Plaintiff's § 1983 claim to the extent it seeks reinstatement of employment.[1]

---

[1] By contrast, any request for an award of "front pay" damages "in lieu" of reinstatement would clearly constitute a demand for monetary relief, which would not be cognizable under the *Young* exception. *See Bernstein v. Perez*, No. 18-61122-CIV-RUIZ-SELTZER, 2019 WL 4694340, at *12 (S.D. Fla. June 24, 2019), *report & rec. adopted by* 2019 WL 4691311 (S.D. Fla. Aug. 21, 2019) ("Although the Eleventh Circuit has not yet decided if 'front pay' would be considered 'injunctive relief' under *Ex Parte Young*, other courts have addressed this issue and found that 'front pay awards are neither prospective nor equitable relief and are therefore barred by state sovereign immunity.'") (quoting *Williams v. Dewey*, No. 7:15-CV-172 (WLS), 2016 WL 890575, at *2 (M.D. Ga. Mar. 8, 2016)); *Ahmed v. Bd. of Trs. of Ala. Agric. & Mech. Univ.*, No. 5:14-cv-01683-JHE, 2017 WL 4532039, at *5 (N.D. Ala. Oct. 10, 2017) (collecting authority).

c.      Against Hambert in His Individual Capacity

As Defendants argue, however, Plaintiff's personal-capacity § 1983 claim against Hambert is plainly deficient as pleaded. Although this claim is not subject to the sovereign immunity considerations at play with Plaintiff's official-capacity § 1983 claim, Plaintiff fails to contend with Defendants' argument that his pleadings simply fail to state a viable § 1983 claim for against Hambert under Rule 12(b)(6). As Defendants note, the Complaint refers to Hambert in one paragraph, only alleging that he had authority to terminate Plaintiff. *See* Compl. [1] at ¶ 10. But it does not at all mention *any* action that Hambert allegedly took, let alone an unlawful one that the Court could redress with relief. Nor does it state that Hambert was even aware of the allegedly unlawful actions taken against Plaintiff. Rather, the Complaint attributes discrete adverse employment actions taken against Plaintiff either to other officers not named as defendants in this action or to no one at all.

This exact deficiency—a failure to plausibly plead that a named government official defendant was aware of or participated in the allegedly unlawful actions described in a complaint—was at the center of *Ashcroft v. Iqbal*, in which the Supreme Court dismissed claims of unconstitutional discrimination for failure to state a claim for relief. *See* 556 U.S. 662, 683 (2009) (holding that discriminatory misconduct by "lower level" government actors cannot be imputed onto

individually-named supervisory defendants without any "factual allegation sufficient to suggest [their] discriminatory state of mind"). The Supreme Court specifically noted that "[i]n a § 1983 suit . . . each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677; *see also Bryant v. Jones*, 575 F.3d 1281, 1299 (11th Cir. 2009) (observing that "liability in § 1983 cases cannot be premised solely on a theory of *respondeat superior*" and that supervisory liability could occur only "'when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation'") (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)); *Brown v. City of Atlanta*, No. 1:14-CV-0708-CC-JSA, 2016 WL 10586169, at *31 (N.D. Ga. Aug. 4, 2016), *report & rec. adopted by* 2016 WL 10588045 (N.D. Ga. Oct. 14, 2016).

Plaintiff appears to acknowledge that his Complaint fails to allege that Hambert personally had a role in any action taken against him. *See* Resp. [16] at 5–6. Rather than contend that the Complaint does state a claim against Hambert, he requests leave to amend the Complaint to include critical facts necessary to establish liability. Notably, Plaintiff did not actually avail himself of his right to so amend the Complaint, which he could have done as a matter of course at the time he responded

to Defendants' motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1)(B). Proceeding with the benefit of counsel, Plaintiff is not otherwise entitled to amend his claims before they face dismissal. *See Carruth v. Bentley*, 942 F.3d 1047, 1063 n.3 (11th Cir. 2019) (citing *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (*en banc*)).

Nevertheless, the Court retains broad discretion to permit Plaintiff to amend his Complaint. Indeed, "Rule 15(a)'s liberal policy of 'permitting amendments to facilitate determination of claims on the merits circumscribes the exercise'" of the Court's discretion to deny amendment—"'unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'" *Luxottica Grp. v. Airport Mini Mall, LLC*, 169 F. Supp. 3d 1343, 1345 (N.D. Ga. 2016) (quoting *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 406–07 (11th Cir. 1989)).

The above-described deficiency of Plaintiff's personal-capacity § 1983 claim against Hambert might be curable with additional plausible factual allegations.[2]

---

[2] Defendants additionally contend that Plaintiff's personal-capacity claim against Hambert should be dismissed because, they argue, Hambert is entitled to qualified immunity for his actions. Because this claim is due for dismissal on other grounds, the Court need not determine whether Hambert is entitled to qualified immunity as to Plaintiff's allegations. Further, to the extent that Plaintiff avails himself of any opportunity to replead his personal-capacity claim, the "fact-intensive inquiry that the qualified immunity standard demands" would be better undertaken once Plaintiff

Thus, the Court is not faced with a circumstance in which amendment of the claim would necessarily be futile. Accordingly, although the undersigned recommends that Plaintiff's personal-capacity § 1983 claim against Hambert be dismissed as it is currently plead, it is additionally recommended that, concurrently with any order adopting such a recommendation, Plaintiff be granted leave to file an amended complaint that repleads the claim.[3]

### 2.    FMLA Claims

Defendants next argue that Plaintiff's FMLA claims against DPS and Hambert in his official capacity are barred by state sovereign immunity and that his FMLA claims against Hambert in his individual capacity should be dismissed because the FMLA does not establish individual liability.

As explained above, sovereign immunity under the Eleventh Amendment generally prohibits retrospective and/or monetary claims against states. *See supra*, Part II-B-1-b. However, the Eleventh Amendment is not absolute: it "is no bar . . .

_____

has had the opportunity to fully plead his allegations. *See Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (*per curiam*).

[3] The current stay on discovery will expire upon the filing of any such amended complaint, absent further order. Even if there is motion practice to challenge the sufficiency of any such future amended complaint, it is not obvious to the Court that discovery should remain stayed in its entirety when several claims covering all or nearly all of the substantive subject matter of this case will be proceeding past the Rule 12(b)(6) stage, including the Title VII claim that is not even subject to any motion to dismiss.

where (1) the state consents to suit in federal court, or (2) where Congress has abrogated the state's sovereign immunity." *Alyshah v. Georgia*, 239 F. App'x 473, 474 (11th Cir. 2007) (citing *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). When properly exercising its power to enforce provisions such as the Fourteenth Amendment to the United States Constitution, Congress may abrogate state sovereign immunity to suit. *See Ala. State Conference of N.A.A.C.P. v. Alabama*, 949 F.3d 647, 654 (11th Cir. 2020).

The FMLA does not validly abrogate state sovereign immunity against claims for monetary damages under its self-care provision. *See Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 43–44 (2012) (plurality opinion). Plaintiff, apparently conceding as much, abandons his FMLA claims against DPS. *See* Resp. [16] at 6.[4] However, he argues that his FMLA claims against Hambert in his official capacity should be sustained, at least to the extent that they seek prospective, injunctive relief not otherwise subject to state sovereign immunity under *Ex parte Young*.

Defendants contend that Plaintiff's argument "misapplies" the *Young* exception to Eleventh Amendment immunity because he allegedly seeks only

---

[4] Plaintiff additionally abandons his FMLA claims against Hambert in his individual capacity. Although he does not expressly so state, his concession of these claims appears to be in response to Defendants' argument that the FMLA does not create individual liability. *See Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999).

21

retrospective remedies for his FMLA claims and that he has failed to plead any ongoing and continuous violation of federal law. Neither assertion is correct. Although Plaintiff does impermissibly seek damages and other retrospective and/or monetary relief against Hambert in his official capacity, he additionally seeks reinstatement. And, as stated above, reinstatement is a prospective, injunctive remedy for an ongoing harm. As such, the Eleventh Amendment does not foreclose a claim for reinstatement under the FMLA. *See Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 966 (6th Cir. 2013) (finding that a claim for reinstatement under the FMLA against state defendants was valid under *Ex parte Young*); *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 321–22 (5th Cir. 2008) (same); *Cobb v. Alabama*, No. 2:10cv502-MHT, 2011 WL 3666696, at *3 (M.D. Ala. Aug. 22, 2011) (holding the same and explaining that "[r]einstatement is a quintessential form of prospective relief").

Defendants counter that permitting any form of an FMLA claim to proceed against Hambert in his official capacity would be contrary to the Supreme Court's decision in *Coleman v. Court of Appeals of Maryland*. *See* Reply [19] at 12–13 (citing 566 U.S. 30, 37 (2012)). As noted above, the Supreme Court determined in *Coleman* that the self-care provisions of the FMLA do not validly abrogate state sovereign immunity. However, nothing about the *Coleman* decision closes the door

on a claim for reinstatement brought under the FMLA. The state sovereign immunity upheld in *Coleman* precludes claims for damages and other retrospective, monetary relief. A claim for reinstatement, on the other hand, is not subject to state sovereign immunity in the first place because of the *Young* exception. *See Crugher v. Prelesnik*, 761 F.3d 610, 615–17 (6th Cir. 2014) ("The Supreme Court [in *Coleman*] did not say anything about the portion of the self-care provision allowing for equitable claims like reinstatement.").

Accordingly, all of Plaintiff's FMLA claims are due to be dismissed, except to the extent that they seek reinstatement against Hambert in his official capacity.[5]

### 3.   ADA Claims

Defendants argue that DPS, as an agency of the State of Georgia, is shielded by sovereign immunity from Plaintiff's ADA claims.

Although the ADA purports to abrogate Eleventh Amendment sovereign immunity from suits arising under its provisions, the Supreme Court has held that

---

[5] Plaintiff's failure to attribute any specific actions by Hambert in violation of the FMLA does not warrant dismissal of the claim to the extent brought against him in his official capacity. Officials in their official capacities are considered "employers" subject to suit under the FMLA, notwithstanding their personal involvement in the alleged conduct or lack thereof. *See Welch v. Laney*, 57 F.3d 1004, 1010–11 (11th Cir. 1995) (finding that a state official could be sued in his official capacity as the plaintiff's "employer" under the Fair Labor Standards Act); *see also Wascura v. Carver*, 169 F.3d 683, 686 (11th Cir. 1999) (noting that "employer" is defined the same way in the FMLA and FLSA").

this provision exceeds Congress's power to abrogate immunity, at least as to suits arising under the employment discrimination provisions of Title I of the ADA. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001). Thus, Eleventh Amendment sovereign immunity remains applicable to employment discrimination claims brought against states or state agencies under Title I of the ADA, unless it can be shown that they have consented to suit. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

Plaintiff argues that Georgia has done so, pointing to the Georgia Court of Appeals' decision in *Williamson v. Department of Human Resources*. In *Williamson*, the Court of Appeals considered whether Georgia had waived its sovereign immunity as to claims of disability discrimination under the Americans with Disabilities Act. *See* 572 S.E.2d 678, 681 (Ga. Ct. App. 2002). Because the state had explicitly waived its sovereign immunity to suit as to claims of disability discrimination under state law brought by state employees, the Court of Appeals held that the state necessarily had done so as to claims of disability discrimination brought under federal law by state employees. *See id.* Plaintiff argues that the state statute that the *Williamson* court interpreted as waiving immunity, the Fair Employment Practices Act ("FEPA"), O.C.G.A. §§ 45-19-21, *et seq.*, operates as a

full waiver to state sovereign immunity against claims of disability discrimination by state employees.

However, *Williamson* does not save Plaintiff's ADA claims. *Williamson* only recognizes Georgia's waiver of sovereign immunity in *its own* courts. *See Walker v Georgia*, No. 1:03-CV-0461-WBH-ECS, 2005 WL 8154325, at *8 (N.D. Ga. Aug. 8, 2005), *report & rec. adopted by* 2005 WL 8154326 (N.D. Ga. Sept. 23, 2005); *Gary v. Ga. Dep't of Human Res.*, 323 F. Supp. 2d 1368, 1372 (M.D. Ga. 2004). As federal courts in Georgia have observed, it did not purport to hold that Georgia has waived its immunity from disability discrimination claims brought in federal court. *See Jackson v. Oconee Cmty. Serv. Bd.*, No. 5:06-CV-55 (WDO), 2006 WL 1652236, at *3 (M.D. Ga. June 8, 2006). This is because a state's sovereign immunity in its own courts is distinct from the sovereign immunity it enjoys in federal court; although both stem from the states' pre-Constitution sovereignty, the latter is "crystallized" by the Eleventh Amendment, which particularly "preserves states' sovereign immunity in the federal courts." *See Stroud v. McIntosh*, 722 F.3d 1294, 1297–98 (11th Cir. 2013). As such, the waiver of one form of sovereign immunity does not mean the waiver of the other, and states' federal court immunity can be reserved notwithstanding a state-court waiver of immunity against the same causes of action. *See Port Auth. Trans-Hudson Grp. v. Feeney*, 495 U.S. 299, 306

(1990); *Crisman v. Fla. Atlantic Univ. Bd. of Trs.*, 572 F. App'x 946, 947–48 (11th Cir. 2014) (*per curiam*).

Although FEPA is clear in its waiver of sovereign immunity against state employee disability discrimination claims in Georgia courts, it does not clearly waive such immunity in federal courts. Because FEPA does not expressly waive Georgia's sovereign immunity to suit in federal courts, and because the Georgia state constitution otherwise reserves the state's sovereign immunity from suit in federal court, *see* Ga. Const. Art. I, § II, ¶ IX(f) ("No waiver of sovereign immunity . . . shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution."), the Eleventh Amendment prohibits federal courts from presuming that the state-court waiver recognized in *Williamson* applies to claims brought in federal court, *see Westbrooks v. Ga. Dep't of Human Servs.*, 2020 WL 426493, at *2 (M.D. Ga. Jan. 27, 2020) (holding that "while Plaintiff could have sued Defendant for money damages under the ADA in state court, she cannot do so in [federal] court" because it could not apply *Williamson*'s state-court waiver in federal court). Thus, notwithstanding *Williamson*, Plaintiff's ADA claims against DPS are barred by sovereign immunity.

Further, unlike with Plaintiff's § 1983 and FMLA claims, sovereign immunity compels the dismissal of the entirety of Plaintiff's ADA claims. Plaintiff is entitled

26

to proceed on his claims for reinstatement under § 1983 and the FMLA only because he asserts such claims against Hambert in his official capacity—his claims for injunctive relief against DPS are due for dismissal because the *Young* exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought[.]" *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). When a plaintiff fails to name any state official as a defendant to their claim, the *Young* exception is inapplicable to even their claims for prospective injunctive relief. *See Nichols v. Ala. State Bar*, 815 F.3d 726, 731 n.3 (11th Cir. 2016) (*per curiam*); *see also Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 619 (5th Cir. 2020); *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 n.2 (5th Cir. 2016) (*per curiam*); *Smith v. Ala. Dep't of Human Res. Child Support Div.*, No. 15-00629-KD-N, 2016 WL 3646881, at *7 (S.D. Ala. June 3, 2016), *report & rec. adopted by* 2016 WL 3637089 (S.D. Ala. June 30, 2016). Plaintiff simply does not assert any ADA claims against Hambert that could proceed under *Young*.[6]

---

[6] In his response to Defendants' motion to dismiss, Plaintiff argues that his ADA claims against Hambert in his official capacity are not barred by sovereign immunity. Plaintiff further argues that, with the opportunity to amend his complaint, he will include facts that would establish individual liability against Hambert. *See* Resp. [16] at 9. Plaintiff's argument is confusing, as his Complaint only purports to sue DPS under the ADA and does not name Hambert in any capacity in those claims. *See* Compl. [1] at ¶¶ 113–37. The issue of whether to "dismiss" any ADA claim against Hambert in his official capacity is therefore moot, because there is no such claim in the Complaint. Plaintiff's reference to adding facts to support a claim for

## III.   RECOMMENDATION

For the reasons discussed above, the undersigned **RECOMMENDS** that the Partial Motion to Dismiss [9] be **GRANTED IN PART** and **DENIED IN PART**. Specifically, Plaintiff's claims against DPS under § 1983, the FMLA, and the ADA should be **DISMISSED**. Plaintiff's § 1983 and FMLA claims against Hambert in his official capacity should be **DISMISSED** except insofar as they seek a remedy of reinstatement. Finally, Plaintiff's § 1983 and FMLA claims against Hambert in his individual capacity should be **DISMISSED**, however, Plaintiff should be granted leave to amend his § 1983 claim against Hambert in his individual capacity within **fourteen (14) days** of any Order by the District Court adopting this Report and Recommendation.

**IT IS SO RECOMMENDED** this 7th day of June, 2021.

_____

JUSTIN S. ANAND

UNITED STATES MAGISTRATE JUDGE

_____

individual liability is entirely unexplained and appears to be facially meritless, as the ADA does not authorize claims against individual supervisors. *See Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996). Plaintiff suggests no basis for which he could amend to add facts to plausibly establish that Hambert, in his personal capacity, could be considered Plaintiff's employer. Thus, the undersigned recommends dismissal of the ADA claim against DPS, and declines to entertain the confusing suggestion in Plaintiff's legal brief that he be allowed to amend those claims against Hambert.